# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GINA L. WATSON,                                    Case No. 1:20-cv-802
    Plaintiff,                                 Barrett, J.
                                               Litkovitz, M.J.

vs.

OHIO AMBULANCE SOLUTIONS, LLC, et al.,             **ORDER AND REPORT AND**
    Defendants.                                **RECOMMENDATION**

    Plaintiff Gina Watson brings this pro se action against defendants Ohio Ambulance Solutions, LLC ("OAS") and Chris Foster ("Foster") alleging causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; and state law for wrongful discharge, misrepresentation by fraudulent inducement, "intentional negligence," and "intentional infliction of emotional harm." (Doc. 4). This matter is before the Court on defendants' motion for judgment on the pleadings, or in the alternative, motion for summary judgment (Doc. 64), plaintiff's response in opposition (Doc. 70)[1], defendants' reply memorandum (Doc. 71), plaintiff's motion objecting to the filing of defendants' dispositive motion (Doc. 72), and defendants' response in opposition (Doc. 73).

## I. Plaintiff's motion objecting to the filing of defendants' dispositive motion (Doc. 72)

    Defendants filed their dispositive motion on May 2, 2023. (Doc. 64). Plaintiff filed her response in opposition, with supporting evidentiary materials, on May 24, 2023. (Doc. 70).

---

[1] Doc. 70 includes plaintiff's brief, her affidavit (Doc. 70-1), non-text-searchable exhibits (Doc. 70-2), and text-searchable exhibits (Doc. 70-3). (Doc. 70). Prior to filing Doc. 70, plaintiff failed to file her response in opposition, affidavit, and exhibits in compliance with S.D. Ohio Civ. R. 5.1(c), which requires the filing of text searchable PDF files. (Docs. 66, 67, 68). Upon notice by the Clerk of non-compliance with this rule (Doc. 69), plaintiff refiled these documents in the required format. (Doc. 70).

Defendants filed their reply memorandum on June 5, 2023.  (Doc. 71).  One week after defendants filed their reply memorandum, plaintiff filed a motion "objecting to the filing of defendant's motion" because it was filed "post pre-trial schedule [and after the] dispositive motion expiration date."  (Doc. 72).  Plaintiff argues that defendants blatantly disregarded their professional ethics and the Federal Rules of Civil Procedure by filing their dispositive motion without leave of Court.  (*Id*. at PAGEID 1737).  Plaintiff contends that defendants filed their dispositive motion "after such a long time (18+ months) after [the] scheduled expiration – she reasonably perceived as suspicious – a clandestine strategy to dispose of this case."  (*Id*.).  Plaintiff points to the December 3, 2020 Calendar Order, which plaintiff argues established a dispositive motion deadline of October 29, 2021.  (*Id*. at PAGEID 1738).  Citing Fed. R. Civ. P. 6 and 60, plaintiff contends that defendants were "forbidden to file a dispositive motion after the agreed upon expiration date[.]"  (*Id*.).

Defendants argue that plaintiff's motion should be denied because "there is currently no dispositive motion deadline, and Plaintiff has misrepresented the Court's current scheduling order."  (Doc. 73 at PAGEID 1743).  Defendants argue that while the Court's December 3, 2020 Calendar Order set a dispositive motion deadline of October 29, 2021 (Doc. 14), the Court stayed the case scheduling deadlines by Order on November 8, 2021.  (*Id*., citing Doc. 47).  Defendants contend these case scheduling deadlines, including the dispositive motion deadline, remain stayed by the Court because "the Court never issued a new Calendar Order or set a dispositive motion deadline."  (*Id*. at PAGEID 1744).  Defendants therefore argue that because there "is currently no dispositive motion deadline," defendants' dispositive motion "is timely."  (*Id*.).

Plaintiff's motion objecting to the filing of defendants' dispositive motion (Doc. 72) is denied because the case scheduling deadlines, which include a dispositive motion deadline, have

been stayed by Court Order.  (Doc. 47).  Accordingly, defendants' dispositive motion was timely

filed as the scheduling deadlines were stayed at the time of defendants' filing.  (Doc. 64).  For

this reason, plaintiff's motion (Doc. 72) is **DENIED**.

## II.  Defendants' motion for judgment on the pleadings, or in the alternative, motion for summary judgment (Doc. 64)

Defendants have submitted documents in support of their motion for judgment on the

pleadings or, in the alternative, motion for summary judgment.  (Doc. 64, Exhs. 1-13).  These

documents include an affidavit, personnel records, internal emails from OAS employees and

other individuals, incident reports, and a copy of the OAS employee handbook.  (*Id.*).  Similarly,

in her response in opposition, plaintiff attached her own signed and notarized affidavit and forty-

four pages of documents including emails, letters, incident reports, portions of the OAS

employee handbook, defendant OAS's responses to plaintiff's first set of requests for production

of documents, and other documentation.  (Doc. 70-1, Doc. 70-3).

Rule 12(d) provides that if "matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

Fed. R. Civ. P. 12(d).  In *Cotterman v. City of Cincinnati, Ohio*, No. 21-3659, 2023 WL 7132017

(6th Cir. Oct. 30, 2023), the Sixth Circuit clarified that under Rule 12(d), if matters outside the

complaint are presented with a motion to dismiss, or in this matter, a motion for judgment on the

pleadings[2], courts "must *expressly* exclude outside-the-complaint materials or convert the motion

to one for summary judgment."  *Id.* at *4 (citing *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*,

452 F.3d 494, 503 (6th Cir. 2006); *Courser*, 831 F. App'x at 169) (emphasis in original).  The

Court of Appeals specified that a "court commits a legal error if it *ignores* the outside materials

---

[2] In *Cotterman*, the Sixth Circuit stated that "Rule 12(d) now applies to motions to dismiss and to motions for judgment on the pleadings, so the same framework governs both."  *Cotterman*, 2023 WL 7132017, at *4 (citing *Courser v. Mich. House of Reps.*, 831 F. App'x 161, 169 (6th Cir. 2020)).

but treats the motion as a motion to dismiss." *Id*. (citing *Max Arnold*, 452 F.3d at 503) (emphasis in original). A court has "discretion either to exclude this outside information (and treat the motion as a motion to dismiss subject to Rule 12's standards) or to consider the information (and treat the motion as a summary-judgment motion subject to Rule 56's standards)." *Id*. (citing cases).

Here, matters outside the amended complaint are presented with defendants' motion and plaintiff's response. As the Court will consider these materials in ruling on plaintiff's federal and state-law discrimination claims, the Court, in its discretion, treats defendants' motion as one for summary judgment as to these claims. In contrast, plaintiff's state-law claims of wrongful discharge, misrepresentation by fraudulent inducement, "intentional negligence," and "intentional infliction of emotional harm" can be adjudicated without referencing matters outside the amended complaint. The Court excludes any consideration of the parties' evidence and will not convert defendants' motion for judgment on the pleadings to a motion for summary judgment on these state-law claims and will apply the Fed. R. Civ. P. 12(c) standard.

Under Rule 12(d), if matters outside the pleadings are presented to and not excluded by the Court, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Both plaintiff and defendants had sufficient notice of the conversion of defendants' dispositive motion to one for summary judgment. First, defendants' motion is styled as a motion for judgment on the pleadings, or in the alternative, motion for summary judgment. (Doc. 64). Second, in responding to defendants' motion, plaintiff outlined the Rule 56 standard and presented summary judgment style arguments, with references to her affidavit and other attached evidentiary documentation. (*See, e.g.*, Doc. 70 at PAGEID 1616-19, 1622, 1624-26, 1628, 1630-31). Accordingly, both parties had sufficient

4

notice and a reasonable opportunity to present all pertinent materials to the motion under Rule 12(d). *See Allgeyer v. City of Cincinnati*, No. 1:16-cv-1128, 2017 WL 4418536, at *3 (S.D. Ohio Oct. 5, 2017) (when the Court converted and construed the defendants' motion for judgment on the pleadings as one for summary judgment because, among other reasons, the plaintiff "not only fully responded to the Defendants' motion and exhibits, but [] attached an additional 189 pages of exhibits with her opposition") (report and recommendation), *adopted*, 2018 WL 1558867 (S.D. Ohio Mar. 31, 2018), *aff'd sub nom. Mary Jill Allgeyer v. City of Cincinnati, Ohio*, No. 20-3827, 2021 WL 4472668 (6th Cir. June 28, 2021), *cert. denied sub nom. Allgeyer v. City of Cincinnati, Ohio*, 142 S. Ct. 476 (2021)). *See also Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 914 (S.D. Ohio 2007) (construing the defendants' motion to dismiss as one for summary judgment because "where both parties rely on matters outside the pleadings, neither party will be surprised or prejudiced by the conversion to a Rule 56 motion") (citing *Williams v. Wilkinson*, 122 F. Supp. 2d 894, 897 (S.D. Ohio 2000) and *Rowe v. Marietta Corp.*, 955 F. Supp. 836, 837 (W.D. Tenn. 1997)).

### A. Legal Standards

#### 1. Motion for Summary Judgment

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co.*

*v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [her]

pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, her filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). That said, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support her factual assertions with admissible evidence. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

### 2. Motion for Judgment on the Pleadings

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). Still, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). Put differently, defendants are entitled to judgment under Rule 12(c) if "no material issue of fact exists and [they are] entitled to judgment as a matter of law." *Id*. at 582 (quoting *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

To withstand a Rule 12(c) motion for judgment on the pleadings, like a Rule 12(b)(6) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co*.,

508 F.3d 327, 336 (6th Cir. 2007) (citation omitted).  "The factual allegations in the complaint

need to be sufficient to give notice to the defendant as to what claims are alleged, and the

plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than

merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A "legal conclusion couched as a factual

allegation" need not be accepted as true; and "a formulaic recitation of the elements of a cause of

action" is insufficient.  *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"

to withstand a Rule 12(c) motion.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B. Facts

#### 1. Hiring and Employee Handbook

Plaintiff, a female "of color" who was "at least 40 years of age," was hired by OAS on

August 24, 2016 and worked as a paramedic until her October 1, 2016 termination.  (Doc. 46,

Pltf. Aff., at PAGEID 484[3];Doc. 64-1, Brenda Lancaster Aff., at PAGEID 1424; Doc. 64-3, Ex.

A-b, at PAGEID 1429).  During these thirty-nine days, plaintiff was an at-will employee, which

is defined in the employee handbook[4] as allowing either plaintiff or OAS to "terminate the

relationship at any time, for any reason, with or without advance notice."  (Doc. 64-13, Ex. A-l,

at PAGEID 1444, 1452; Doc. 64-1, Brenda Lancaster Aff., at PAGEID 1427).  In addition to

being an at-will employee, plaintiff was subject to a "three (3) month introductory period."  (Doc.

---

[3] Plaintiff's affidavit submitted in response to defendants' motion incorporates by reference her previous affidavit dated May 19, 2023.  (Doc. 70-1 at PAGEID 1639).

[4] Plaintiff received a copy of the OAS employee handbook on August 23, 2016, the day before she was hired by OAS.  (Doc. 64-1, Brenda Lancaster Aff., at PAGEID 1424; Doc. 64-13, Ex. A-l, at PAGEID 1444; Doc. 70-1, Pltf. Aff., at PAGEID 1634).

64-13, Ex. A-l, at PAGEID 1505). The employee handbook explains that during the "initial Introductory Period, and any time thereafter, employment may be terminated at the option of either the employee or Ohio Ambulance." (*Id.*).

### 2. Plaintiff's Employment with OAS

Defendants point to several events that occurred during plaintiff's employment with OAS, which ultimately led to her termination on October 1, 2016. First, defendants received several complaints from OAS employee Rachael Copple who requested not to work with plaintiff. (Doc. 64-6, Ex. A-e, at PAGEID 1435). Ms. Copple complained she had problems with plaintiff's attitude, negative and erratic behavior, and unsafe driving. (*Id.*). Second, OAS employee Marjie Eversole reported a situation where plaintiff displayed erratic driving, exhibited improper patient care, and showed unprofessional and rude behavior toward Ms. Eversole, staff, and a patient. (Doc. 64-4, Ex. A-c, at PAGEID 1430-33). Third, a non-OAS employee, Registered Nurse Desiree Ballew, complained about plaintiff's alleged unprofessional behavior during the transport of a patient. (Doc. 64-5, Ex. A-d, at PAGEID 1434). Fourth, OAS employees April Robinson, Justin Robeson, Paige Bowden, and Brandon T.[5] filed incident reports alleging that plaintiff was rude, yelled at other employees, and displayed unprofessional conduct on several occasions in September and October 2016. (Docs. 64-9, Ex. A-h, at PAGEID 1439; Doc. 64-10, Ex. A-i, at PAGEID 1440; Doc. 64-11, Ex. A-j, at PAGEID 1441; Doc. 64-12, Ex. A-k, at PAGEID 1442-43).[6]

---

[5] This OAS employee's last name on the attached incident report is illegible.

[6] The Court notes that documentation surrounding the September 29, 2016 incident was the subject of two motions to compel filed by plaintiff in this lawsuit. (*See* Docs. 37, 54). In those motions to compel, plaintiff argued that defendants destroyed video footage that showed what occurred on September 29, 2016 between her and other OAS employees. (*Id.*). The Court denied both motions to compel, in pertinent part, on the basis that defendants could not be compelled to produce documents or video evidence that did not exist. (Docs. 49, 63). In denying plaintiff's second motion to compel concerning video footage, the undersigned stated that "it is clear the surveillance video no longer exists and cannot be produced as evidence in this case." (Doc. 63 at PAGEID 1403). The undersigned explained that "to the extent defendants may seek to admit the testimony of individuals recounting what they

### 3.  Plaintiff's version of events

Plaintiff stated within the first week of her employment, she "experienced pernicious, combative, disrespectful, confrontational conduct by EMTs that was impacting [her] ability to perform the expectations and requirements of [her] position as Paramedic."  (Doc. 70-1, Pltf. Aff., at PAGEID 1634).  Plaintiff explained she "alerted [her] supervisors verbally of [] EMTs['] conduct [she] believed was motivated by some discriminatory animus" and she was "not provide[d] the proper resources to put [her] complaint in written form."  (*Id*.).  Plaintiff "informed [her] supervisors that EMT[s] were exhibiting unprofessional conduct and the hostility in [her] work environment appeared to be escalating."  (*Id*.).  Plaintiff stated no actions were taken by management after she made a verbal complaint.  (*Id*.).  Following the "escalation of hostility in [plaintiff's] work environment in the form of intimidation, physical threats, resistance, including combativeness, uncooperation, and disrespectful behavior in the presence of hospital staff, medical facility staff, during responses and upon interacting with clients," plaintiff's "EMT coworkers became more combative [and] uncooperative."  (*Id*. at PAGEID 1635).  Plaintiff described an incident where her "EMT coworkers April Robinson, Tammy

---

observed on the video prior to its overwriting, this is prohibited.  An affiant's interpretation of surveillance footage *may not be considered on summary judgment* because it would constitute inadmissible hearsay and violate the best evidence rule."  (*Id*. at PAGEID 1403-04) (emphasis added) (citing *Hinson v. Bias*, 927 F.3d 1103, 1108 n.1 (11th Cir. 2019), *Slocum v. Bear*, No. 1:18-cv-423, 2021 WL 3683873, at *4 (S.D. Ohio Mar. 26, 2021) (report and recommendation), *adopted*, 2021 WL 3683353 (S.D. Ohio Aug. 19, 2021).  Despite this Court Order, in their motion for summary judgment, defendants attached documentation from OAS employees Brenda Lancaster and Saundra Goodrow interpreting what they viewed on the video footage from September 29, 2016.  (Doc. 64-7, Ex. A-f, at PAGEID 1436; Doc. 64-8, Ex. A-g, at PAGEID 1437).  As previously stated by the undersigned (Doc. 63 at PAGEID 1403-04), to the extent that defendants rely on statements from individuals who did not personally observe this September 29, 2016 incident, these statements are hearsay, not admissible, and may not be considered on summary judgment.

.

LaCrone, [and] Margie Eversole physically confronted and swung on [her] as they obstructed [her] privacy and access to the clock-in terminal. . . .” (*Id.* at PAGEID 1635). Plaintiff stated she was not given notice of “actions taken by [her] employer to correct the hostility in the work environment, nor was an active participant in any meetings, nor counsel, nor aware of any ‘investigation’ defendant alleges occurred prior to the adverse action to terminate [her].” (*Id.*). Plaintiff also stated that she was “denied an opportunity to a promoted position after defendant elected to exclude [her] and appoint EMT Brandon Halsey, a Caucasian male, substantive (sic) younger, when [she] was more qualified[.]” (*Id.*).

Plaintiff stated defendants presented no “documentation . . . [or] substantive evidence for the grounds related to the actions” taken against her. (Doc. 46, Pltf. Aff., at PAGEID 489). Plaintiff explained that “OAS made an intentionally malicious position statement that was meant to harm her and negligent in forwarding allegations, and defamatory statements in reference to her character, integrity, and capacity to perform[.]” (*Id.*). Plaintiff averred that defendants “committed discrimination and knew and should have known that its commentaries were of extreme reckless indfifference (sic) by its failure to commence no due diligence, in total disregard of company procedures and policy, to uncover the truth of any allegations and claims proffered as grounds for adverse tangible actions levied against her.” (*Id.*).

### 4. Termination

On September 30, 2016, Christopher Long, OAS Division EMS Manager, and Brenda Lancaster, OAS Human Resources Director, informed plaintiff by telephone that she had been removed from the schedule and to contact them as soon as possible. (Doc. 64-3, Ex. A-b, at PAGEID 1429). When plaintiff arrived to work on October 1, 2016, Mr. Long asked Nikole Phillips, OAS field supervisor, and Brad Herrin, OAS recruiter, to join him when he spoke to

plaintiff. (*Id*.). Mr. Long, Ms. Phillips, Mr. Herrin, and plaintiff walked into Mr. Long's office where Mr. Long terminated plaintiff's employment. (*Id*.; *see also* Doc. 64-2, Ex. A-a, at PAGEID 1428; Doc. 70-1, Pltf. Aff., at PAGEID 1635). Mr. Long told plaintiff he elected to terminate plaintiff's employment with OAS "due to the amount of incident reports written up and our concerns. . . ." (Doc. 64-3, Ex. A-b, at PAGEID 1429). Plaintiff believed OAS "secretly" collected incident reports without her knowledge containing allegations and claims from her coworkers as a basis for her termination. (Doc. 70-1, Pltf. Aff., at PAGEID 1635). Plaintiff stated defendants engaged in an "unexplained departure from normal company policies and procedures[.]" (*Id*. at PAGEID 1636). Plaintiff "asked why management was treating [her] differently than [her] coworkers allowing them to document their allegations and claims but denying [her] rights to 'due process' or [the] opportunity to 'tell [her] side of the story' pursuant to disciplinary policies and procedures[.]" (*Id*. at PAGEID 1636). Plaintiff "repeatedly opposed the actions being taken by management, [and] openly expressed 'This is discrimination.'" (*Id*.; *see also* Doc. 64-3, Ex. A-b, at PAGEID 1429). Plaintiff asked to see the incident reports and other evidence for her termination, and Mr. Long told plaintiff that she should contact Ms. Lancaster in Human Resources if she had any further questions. (*Id*.).

On October 1, 2016, the same day OAS terminated plaintiff's employment, plaintiff called Ms. Lancaster to inquire why she was terminated. (Doc. 64-2, Ex. A-a, at PAGEID 1428). Ms. Lancaster informed plaintiff that she was terminated due to (1) a complaint from a facility employee, (2) complaints from her coworkers refusing to work with her, and (3) an incident that occurred the night before, on September 30, 2016. (*Id*.). According to plaintiff, she has "neither exihibited (sic) unprofessional conduct, nor performed less than my certification, capacity, or required for my position, nor interacted 'aggressive[ly]' or provocatively in any way with any

12

person, in any way that a reasonable person would deem 'disrespectful' or 'rude' for the entirety of my life. . . ." (Doc. 70-1, Pltf. Aff., at PAGEID 1637). Plaintiff also states that OAS made false and misleading statements to the Equal Employment Opportunity Commission ("EEOC") in its position statement to the EEOC. (Doc. 46 at PAGEID 489).

### C. Analysis

Plaintiff alleges five counts against defendants in her amended complaint: Count I for misrepresentation by fraudulent inducement; Count II for intentional negligence; Count III for disparate treatment; Count IV for wrongful discharge; and Count V for intentional infliction of emotional harm. (Doc. 4).

### 1. Defendants' motion for summary judgment should be granted on plaintiff's disparate treatment claims.

#### a. Count Three of Plaintiff's Amended Complaint: Disparate Treatment

Title VII of the Civil Rights Acts of 1964 makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race or sex. 42 U.S.C. § 2000e-2(a). Ohio Rev. Code § 4112.02 makes it unlawful for an employer to "discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02. The Ohio courts analyze discrimination claims under Ohio law based on the same standards applicable to claims under federal law. *Fletcher v. U.S. Renal Care*, 709 F. App'x 347, 351 n.1 (6th Cir. 2017) (citing *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 163 (6th Cir. 2004)) (in turn citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981)). Because the same standards apply, the Court will analyze plaintiff's

13

federal and state discrimination claims together as though all such claims had been brought under Title VII.

A plaintiff can prove discrimination through either direct evidence or circumstantial evidence. Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 534 (6th Cir. 2012) (citations omitted). "Direct evidence must prove not only discriminatory animus, but also that the employer actually acted on that animus." *Id*. (citing *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)). There is no dispute that plaintiff failed to present any direct evidence of discrimination by defendants.

Where, as here, a plaintiff seeks to prove her Title VII claim through circumstantial evidence, the claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Chattman v. Toho Tenax Am., Inc*., 686 F.3d 339, 347 (6th Cir. 2012) (citing *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009)). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Once the plaintiff proves a prima facie case of discrimination, the burden shifts to the defendant to produce some legitimate, nondiscriminatory reason for the adverse employment action. If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the reason offered by the defendant is a mere pretext for unlawful discrimination. *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802, 804). Even with this burden-shifting framework, "[t]he ultimate burden of persuasion remains at all times with the plaintiff." *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). To survive summary judgment, the plaintiff "must produce

14

sufficient evidence from which a jury could reasonably reject" the defendants' explanation for the termination. *Davis v. City of Clarksville*, 492 F. App'x 572, 580 (6th Cir. 2012) (quoting *Chen*, 580 F.3d at 400).

### (1)  Race and Gender Discrimination

To establish a prima facie case of race or gender discrimination under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by or treated less favorably than a similarly-situated individual outside the protected class. *Yazdian v. ConMed Endoscopic Techs., Inc*., 793 F.3d 634, 654-55 (6th Cir. 2015) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)).  An adverse employment action is a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atl. Co*., 188 F.3d 652, 662 (6th Cir. 1999)).

To be considered "similarly situated" for purposes of the fourth prong of the prima facie case, the employment situation of the comparator and plaintiff must be similar "in all relevant aspects." *Romans v. Michigan Dept. of Hum. Servs.*, 668 F.3d 826, 837-38 (6th Cir. 2012) (quoting *Highfill v. City of Memphis*, 425 F. App'x 470, 474 (6th Cir. 2011)).  In the disciplinary context, plaintiff must also show that the employees with whom she seeks to compare herself "engaged in acts of comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc*., 703 F.3d 911, 917 (6th Cir. 2013).  In making this assessment, the Court must consider factors such as whether plaintiff and the alleged comparators "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or

the employer's treatment of them for it." *Id*. (citation and internal quotations omitted).  *See also Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir. 1992)).

No one disputes that plaintiff, a biracial female, is a member of a protected class for purposes of her discrimination causes of action.  Nor do defendants argue in their motion for summary judgment that plaintiff failed to establish that she suffered an adverse employment action or was otherwise qualified for her position.  Rather, defendants argue that plaintiff failed to establish the fourth element of her prima facie claims of race and gender discrimination — that she was replaced by or treated less favorably than a similarly-situated individual outside the protected class.  (Doc. 64 at PAGEID 1414-15).

Plaintiff has not established a prima facie case of race or gender discrimination because she has produced no evidence to satisfy the fourth element of her prima facie case.  Plaintiff has identified no non-biracial, or non-female, employees who were allegedly treated more favorably than plaintiff.  In her affidavit, plaintiff argues, with no accompanying explanation or examples, that OAS "treated me differently than my coworkers who were Caucasian, less than thirty years old, significantly [] younger, with lesser qualifications, and not in my protected class, absent justification, nor warrant[.]"  (Doc. 70-1, Pltf. Aff., at PAGEID 1636; *see also* PAGEID 1637, "I believe my employer treated me differently than my coworkers who were not in my protected class[.]").  Plaintiff, however, has identified none of the employees by name, and she has not presented evidence showing how these employees were similarly-situated in all relevant aspects.  Plaintiff has also failed to present evidence showing how she was treated less favorably than her co-workers.  *See Allgeyer*, 2021 WL 4472668, at *4 ("The evidence presented to the district court does not demonstrate that [the plaintiff] was treated differently from similarly situated

16

employees; it does not identify anyone similarly situated to [the plaintiff] at all.").  Plaintiff's conclusory allegations of disparate treatment are insufficient to meet her burden on summary judgment.

Thus, plaintiff has failed to present evidence creating a genuine issue of fact on the fourth element of her prima facie cases of race or gender discrimination.  Defendants' motion for summary judgment should be granted on plaintiff's race and gender discrimination claims.[7]

### (2)  Age Discrimination

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age [or] to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect h[er] status as an employee, because of such individual's age. . . ."  29 U.S.C. § 623(a)(1), (2).  To establish a prima facie case of age discrimination under the ADEA, the plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position in question; and (4) she was replaced by a "significantly younger" person or that similarly situated younger employees were treated more favorably.  *Tschappatt v. Crescent Metal Prod., Inc.*, 798 F. App'x 887, 888 (6th Cir. 2020) (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) and *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008)).  "In age discrimination cases, the

---

[7] The Court need not determine whether defendants produced some legitimate, nondiscriminatory reason for the adverse employment action because, as discussed, there is no genuine issue of material fact that plaintiff did not meet her burden under the *McDonnell Douglas* framework of establishing a prima facie case of race or gender discrimination.

.

protected class includes all workers at least 40 years old. . . ."  *Grosjean*, 349 F.3d at 335.
Where a plaintiff seeks to create an inference of discrimination by comparing herself to a
younger person under the fourth element of a prima facie case, "the comparison must be between
employees 'similarly situated' to the plaintiff in all relevant respects."  *Tschappatt*, 798 F. App'x
at 889 (internal citations omitted).  The Court should consider "whether the younger individual
was under the same supervisor, had a similar prior disciplinary record, or engaged in comparably
serious misconduct."  *Id*.

In an age discrimination case, the ultimate burden of persuasion remains with the plaintiff
to "prove by a preponderance of the evidence (which may be direct or circumstantial) that age
was the 'but-for' cause of the challenged employer decision."  *Pelcha v. MW Bancorp, Inc*., 988
F.3d 318, 323-24 (6th Cir.), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461
(2021) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).  In other words,
the plaintiff must establish that "age was the 'reason' that the employer decided to act."  *Scheick
v. Tecumseh Pub. Schs*., 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr.
v. Nassar*, 570 U.S. 338, 350-51 (2013)).  Accordingly, to overcome the employer's motion for
summary judgment, the plaintiff "must show a genuine dispute of material fact that, if resolved
in her favor, could persuade a reasonable juror that age was the but-for cause of her termination."
*Pelcha*, 988 F.3d at 324.

Plaintiff has not established a prima facie case of age discrimination because while she
was over age 40 at the time in question, she has produced no evidence to satisfy the fourth
element of her prima facie case.  Plaintiff has presented no evidence to show that anyone filled
her position after her termination, and she has not shown that she was replaced by a significantly
younger person.  Nor has plaintiff presented evidence that similarly situated younger employees

were treated more favorably.  Rather, plaintiff makes generalized and conclusory statements referencing discrimination in the abstract, such as the following:

> I believe my employer had me work under different terms, conditions, than my coworkers not in my protected class, that my employer violated my rights, privileges, opportunities upon its sudden departure from normal prescriptions of company policies and procedures, treated me differently than my coworkers who were Caucasian, less than thirty years old, significanly younger (sic), with lesser qualifications, and not in my protected class, absent justification, nor warrant[.]

(Doc. 70-1, Pltf. Aff., at PAGEID 1636; *see also* PAGEID 1637: "[defendants were] motivated by discriminatory animus, and maliciously targeted to single me out and treat me differently than my coworkers who were not in my protected class, after I sounded opposition to what was occurring during my employment[.]").  Apart from stating she was over forty years old, plaintiff mentioned the word "age" a single time in her affidavit: "[defendants] sudden[ly] depart[ed] from company policy and procedures absent warrant or justification, otherwise, I was victimized to suffered reprisal, I reasonably 'honestly believe,' was because of my color, my gender/sex, *and my age*[.]"  (*Id*. at PAGEID 1638) (emphasis added).

Plaintiff does not provide any evidence creating a genuine issue of fact on the fourth element of her prima facie case.  Because plaintiff has failed to submit evidence from which a reasonable jury could conclude that she was replaced by a younger worker or was treated differently from a younger, similarly situated worker, the Court recommends that defendants' motion for summary judgment be granted as to plaintiff's age discrimination claim.

### (3)  Failure to Promote

Although plaintiff does not specifically assert a separate cause of action for failure to promote, plaintiff states in her affidavit that she was denied an opportunity for a promotion allegedly based on her protected status.  (Doc. 70-1, Pltf. Aff., at PAGEID 1635).  Plaintiff states she "was denied an opportunity to a promoted position after defendant elected to exclude me and

19

appoint EMT Brandon Halsey, a Caucasian male, substantive younger, when I was more qualified[.]" (*Id*.).  Defendants move for summary judgment on plaintiff's failure to promote claim because plaintiff "has not alleged or provided any evidence that she applied and was qualified for a promotion, that she was considered for and denied a promotion, or that an employee of similar qualifications who was not a member of the protected class received the promotion." (Doc. 64 at PAGEID 1418).  Defendants contend that plaintiff "has not even established there was an open position." (*Id*.).

To prove a prima facie case of discrimination in a failure to promote case, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *Henry v. Abbott Lab'ys*, 651 F. App'x 494, 499 (6th Cir. 2016) (quoting *White v. Columbus Metro. Hous. Auth*., 429 F.3d 232, 240 (6th Cir. 2005)).

Defendants' motion for summary judgment should be granted on plaintiff's failure to promote claim for two reasons.  First, although it is undisputed that plaintiff is a member of a protected class, plaintiff introduced no evidence that she applied for a promotion; that she was considered for the promotion; and that she was denied the promotion.  "An employment discrimination claim for failure to promote simply cannot stand absent proof that a position was available and that the employee applied for it." *Seifu v. Postmaster Gen., U.S. Postal Serv*., No. 1:19-cv-572, 2021 WL 4745416, at *8 (S.D. Ohio Oct. 12, 2021), *aff'd sub nom. Seifu v. Postmaster Gen. of U.S.*, No. 21-4068, 2022 WL 19835788 (6th Cir. Dec. 12, 2022) (citing *Storch v. Beacon Hotel Corp*., 788 F. Supp. 960, 965 (E.D. Mich. 1992) (granting partial

summary judgment where, despite plaintiff's expressed interest in an assistant general manager position, she failed to show that the position was vacant and available, that she applied, or that any person was ever placed into the position)).  Therefore, to "prove her failure-to-promote claim, Plaintiff must start by identifying a specific [opportunity] that existed, for which she was qualified, applied, and was rejected." *Id.*

Plaintiff has submitted no evidence about the specific position for which she was allegedly denied a promotion.  Nor does she present evidence that she took affirmative steps to apply for a different position within the company, or that she expressed any interest in such a position with OAS.  Rather, plaintiff states she "was denied an opportunity to a promoted position after defendant elected to exclude me" from the position.  (Doc. 70-1, Pltf. Aff., at PAGEID 1635).  This conclusory allegation is insufficient to meet her burden on summary judgment.  *See Stokes v. Ells*, No. 2:14-cv-1601, 2017 WL 1091680, at *4 (S.D. Ohio Mar. 23, 2017) ("Without specifically applying for or expressly stating his interest in the position, he cannot establish that he was considered for and denied a promotion.  Therefore, [the] Plaintiff's failure to promote claim fails as a matter of law because he did not apply for any promotions.").  *See also Patterson v. Best Buy Co.*, No. 1:13-cv-49, 2015 WL 248015, at *4 (S.D. Ohio Jan. 20, 2015) (granting summary judgment because the plaintiff "did not apply for any available positions")  (citing *Hall v. Michigan State Police Dep't*, 290 F. App'x 913, 918 (6th Cir. 2008)).

Second, plaintiff failed to introduce evidence that an individual of similar qualifications, who was not a member of plaintiff's protected class, received the purported promotion at the time plaintiff's request for the promotion was denied.  "[I]n order to satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had

similar qualifications." *White*, 429 F.3d at 242 (citing *Williams v. Columbus Metro. Hous. Auth.*, 90 F. App'x 870, 873 (6th Cir. 2004), *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003), and *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)). *See also Stokes*, 2017 WL 1091680, at *5 ("Even if [the] Plaintiff had sufficiently established the first three elements of a prima facie case of failure to promote, he would still have to establish that an individual of similar qualifications outside of the protected class received the job.").

Here, plaintiff identified "EMT Brandon Halsey" as the individual who allegedly was hired for the unidentified position. (Doc. 70-1, Pltf. Aff., at PAGEID 1635).[8] Plaintiff, however, failed to introduce evidence that "*an individual of similar qualifications* outside of [plaintiff's] protected class received the job." *Stokes*, 2017 WL 1091680, at *5 (emphasis added). Although plaintiff states that "EMT Brandon Halsey" is "a Caucasian male [and] substantive younger" (Doc. 70-1, Pltf. Aff., at PAGEID 1635), plaintiff fails to point to any evidence that this individual was similarly qualified to plaintiff. *See Stokes*, 2017 WL 1091680, at *5 ("Other than his own subjective belief that he was equally qualified or more qualified, [the] Plaintiff presents no evidence that shows an individual of similar qualifications received the job."). *See also Oliver v. Luke's Dialysis LLC*, 491 F. App'x 586, 588-89 (6th Cir. 2012) (affirming summary judgment where the plaintiff failed to identify any similarly situated employees outside her protected class and therefore failed to establish a prima facie case for discrimination). For these reasons, the Court recommends that defendants' motion for summary judgment be granted on plaintiff's failure to promote cause of action.

---

[8] In the "CONCLUSION" section of her response in opposition to defendants' motion for summary judgment, plaintiff argues that "EMT Brandon Hawley was appointed to the Emergency Medical Instructor position where the Plaintiff undoubtedly was most qualified[.]" (Doc. 70 at PAGEID 1628). This statement, however, is unsupported by any evidence. Plaintiff's brief is not evidence, and she fails to cite any "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" under Rule 56 in support for this argument. Fed. R. Civ. P. 56 (c)(1)(A).

**2.  Defendants' motion for judgment on the pleadings should be granted.**

a.  <u>Count Four of Plaintiff's Amended Complaint: Wrongful Discharge</u>

As stated above, plaintiff's state-law claims of wrongful discharge, misrepresentation by fraudulent inducement, "intentional negligence," and "intentional infliction of emotional harm" will be adjudicated without treating defendants' motion for judgment on the pleadings as a motion for summary judgment.  Therefore, the Court will apply the Fed. R. Civ. P. 12(c) standard to plaintiffs' remaining state-law claims and exclude consideration of any materials aside from the allegations in plaintiff's amended complaint.

Defendants move for judgment on the pleadings on plaintiff's wrongful discharge claim. Plaintiff's amended complaint alleges that her termination violated "the anti-discrimination in employment intent of Title VII of the Civil Rights Act of 1964 et seq. ('Act'), ADEA, Constitutional law and state enacted statutes in consideration of achieving equitable protections in employment."  (Doc. 4 at PAGEID 106).

"In Ohio, absent an employment contract, an employee is an employee at will and may be terminated at any time for any lawful reason or for no reason at all."  *Herrington v. DaimlerChrysler Corp.*, 262 F. Supp. 2d 861, 864 (N.D. Ohio 2003), *aff'd*, 125 F. App'x 23 (6th Cir. 2004) (citing *Mers v. Dispatch Printing Co*., 483 N.E.2d 150, 153 (Ohio 1985)).  *See also Mitchell v. Fujitec Am., Inc*., 518 F. Supp. 3d 1073, 1088 (S.D. Ohio 2021) ("[A]n employer generally may terminate an at-will employee for any reason at any time, and that terminated employee may not sue the employer for wrongful discharge.") (citing *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002)).  That said, if an at-will employee "is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a

cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829 (Ohio 2011) (citing *Painter v. Graley*, 639 N.E.2d 51 (Ohio 1994), paragraph three of the syllabus; *Greeley v. Miami Valley Maint. Contrs., Inc.*, 551 N.E.2d 981 (Ohio 1994), paragraph one of the syllabus).

To the extent that plaintiff asserts a cause of action for wrongful discharge in violation of Ohio public policy, she must allege:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 39-40 (Ohio 2007).  The Ohio Supreme Court has stated that the second element of a wrongful termination claim, the jeopardy element, requires a court to examine whether there are alternative means of promoting the public policy at issue:

> Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, the issue of adequacy of remedies becomes a particularly important component of the jeopardy analysis.  If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy.  Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles*, 773 N.E.2d at 531.

For this reason, plaintiff cannot bring a claim for wrongful discharge in violation of Ohio

public policy based on her allegations that she was discriminatorily terminated.  The Sixth

Circuit has held that a claim for wrongful discharge in violation of public policy fails where both

Title VII and Ohio Rev. Code § 4112.02 provide the plaintiff with adequate protection and

remedies.  *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004).  *See also Cason v.*

*Int'l Truck & Engine Corp.*, 492 F. Supp. 2d 802, 815 (S.D. Ohio 2005) ("[T]he remedies

provided by state and federal anti-discrimination statutes, herein Chapter 4112 and the ADEA,

adequately protect the public policy embodied by those statutes, so that the public policy will not

be jeopardized by in the absence of a common law claim for wrongful discharge in violation of

that policy.") (citing cases).  Because plaintiff bases her wrongful discharge cause of action

under Title VII and the ADEA, both of which already provide an adequate remedy to plaintiff,

she may not maintain a separate cause of action under Ohio common law.  Accordingly, the

Court recommends that defendants' motion for judgment on the pleadings be granted on

plaintiff's wrongful discharge claim.

### b.  Count One of Plaintiff's Amended Complaint: Misrepresentation by Fraudulent Inducement

In her misrepresentation by fraudulent inducement cause of action, and as best the Court

can discern, plaintiff argues that defendants made false representations about their policies in the

employee handbook, including that it would protect employees from discrimination, harassment,

and retaliation.  (Doc. 70 at PAGEID 1620-21).  In their motion for judgment on the pleadings,

defendants argue that plaintiff "makes vague and unintelligible allegations that OAS neglected

its duty to perform according to its policies and procedures, presumably in terminating her

employment" and "[n]owhere does Plaintiff allege any of the alleged representations were

material, made falsely, with the intent to induce reliance on the representation, or that the alleged

misrepresentations proximately caused her injuries."  (Doc. 64 at PAGEID 1418-19).

To state a claim for fraudulent misrepresentation under Ohio law, a plaintiff must allege: "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance." *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859 (1998)).

Here, plaintiff's amended complaint fails to allege any facts plausibly showing defendants made materially false representations in their employment policies; that plaintiff relied on such misrepresentations; or that defendants intended to mislead plaintiff to rely on such policies. *Stuckey*, 819 F. Supp. 2d at 682. Though plaintiff argues that OAS violated its own policies, the Court cannot plausibly infer beyond plaintiff's speculative and conclusory belief that defendants maintained these policies falsely intending to mislead its employees. Accordingly, the Court recommends that defendants' motion for judgment on the pleadings be granted on plaintiff's misrepresentation by fraudulent inducement claim.

        c.  <u>Count Five of Plaintiff's Amended Complaint: Intentional Infliction of Emotional Harm</u>

In Ohio, to state a claim for intentional infliction of emotional distress ("IIED"), plaintiff must prove: (1) the defendants intended to cause plaintiff's emotional distress or should have known that such serious emotional distress would result, (2) the defendants' conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the defendants' conduct proximately caused the plaintiff's psychic injury, and (4) the plaintiff's emotional distress was so serious that no reasonable person could be expected

26

to endure it. *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).

"Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in

which if the story is told would extract the exclamation of 'outrageous!' from a reasonable

person." *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (citing *Pyle v.*

*Pyle*, 463 N.E.2d 98, 104 (Ohio Ct. App. 1983)).

      The allegations of plaintiff's amended complaint do not satisfy the element of extreme or

outrageous conduct to state an intentional infliction of emotional distress claim. As this Court

has noted:

> [L]iability for intentional infliction of emotional distress "has been found only
> where the conduct has been so outrageous in character, and so extreme in degree,
> as to go beyond all possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized community." *Yeager*, 453 N.E.2d at 671.
> "[A]n employee's termination, even if based upon discrimination, does not rise to
> the level of 'extreme and outrageous conduct' without proof of something more. If
> such were not true, then every discrimination claim would simultaneously become
> a cause of action for the intentional infliction of emotional distress." *Godfredson*
> *v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

*Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 709-10 (S.D. Ohio 2014). Plaintiff has

not alleged facts indicating defendants engaged in conduct that a reasonable person could

conclude is "beyond all possible bounds of decency" or atrocious. *Id.* Therefore, the amended

complaint fails to allege an essential element of an IIED claim.

      Second, even if the Court could find that defendants' conduct was extreme and

outrageous, the amended complaint fails to allege that plaintiff has suffered serious emotional

distress. Serious emotional distress requires a showing of serious mental anguish:

> "[T]he mental anguish suffered must be very serious-'beyond trifling mental
> disturbance, mere upset or hurt feelings.' *Paugh v. Hanks*, 451 N.E.2d 759, 765
> (Ohio 1983). Rather, the emotional injury must be 'both severe and debilitating[]'
> such that a reasonable person 'would be unable to cope adequately with the mental
> distress engendered by the circumstances of the case.'" *Id.* (citations omitted).
> "[S]ome examples of serious emotional distress . . . 'include traumatically induced

27

neurosis, psychosis, chronic depression, or phobia.' *Id*. (citation omitted)."

*Dean v. Norfolk S. Ry. Co*., No. 4:13-cv-2622, 2015 WL 1423456, at *7 (N.D. Ohio Mar. 27,

2015), *aff'd*, No. 15-3446 (6th Cir. Apr. 6, 2016).

Plaintiff alleges in her amended complaint that "OAS maliciously forwarded erroneous

and unsubstantiated information to the EEOC which harmed her credibility, integrity, and

character maligned proper and impartial analysis by a federal agency investigating her complaint

of discrimination where she was victimized and humiliated." (Doc. 4 at PAGEID 106). The

emotional injury plaintiff alleges—harm to her credibility, integrity and character and

humiliation—does not rise to the level of severe emotional distress. The Court cannot conclude

that this emotional distress was more than a reasonable person might be expected to endure when

erroneous and unsubstantiated information is presented to a federal agency investigating a

complaint of employment discrimination. *Cf. Mathur v. Meriam Process Techs*., No. 1:10-cv-

00121, 2010 WL 3211875, at *3 (finding no allegation of serious emotional distress because

"[a]lthough the loss of employment and medical insurance may be interpreted as severe, a

reasonable person should be expected to endure that pain.") (report and recommendation),

*adopted*, 2010 WL 3211872 (N.D. Ohio Aug. 11, 2010). The amended complaint fails to allege

the requisite mental injury to state a claim for IIED. Accordingly, it is recommended that

defendants be entitled to judgment on the pleadings on plaintiff's IIED claim.

> d. Count Two of Plaintiff's Amended Complaint: "Intentional
> Negligence"

Plaintiff asserts a claim for "Intentional Negligence" in her amended complaint. (Doc. 4

at PAGEID 103). Plaintiff alleges that defendants intentionally neglected to act with reasonably

prudent due regard while she was employed as a paramedic with OAS. (*Id*.). A claim for

"intentional negligence," however, "is not a cause of action recognized under federal or state

28

law." *Thompson v. Lied Animal Shelter*, No. 2:08-cv-00513, 2009 WL 160237, at *6 (D. Nev.

Jan. 22, 2009). *See also Wani v. Croy*, No. 3:17-cv-01192, 2017 WL 7360373, at *2 (D. Or.

Dec. 13, 2017) ("A claim for 'intentional negligence' does not exist.") (report and

recommendation), *adopted*, 2018 WL 700794 (D. Or. Feb. 2, 2018); *Willoughby v. Virginia*, No.

3:16-cv-784, 2017 WL 4171973, at *7 (E.D. Va. Sept. 20, 2017) ("Intentional negligence,

however, is not a recognized tort claim, nor does [the plaintiff] plead any additional facts that

could hel[p] the Court decipher the origins of his so-called 'intentional[ ] negligen[ce]' claim.");

*McCabe v. McComber*, No. CIV 08-00112, 2008 WL 4133186, at *11 (D. Haw. Sept. 8, 2008)

("There is no cause of action for 'intentional negligence,' under state or federal law. . . .");

*Carlson v. Trans Union, LLC*, 261 F. Supp. 2d 663, 665 (N.D. Tex. 2003) (same).  Accordingly,

the Court recommends that defendants' motion for judgment on the pleadings be granted on

plaintiff's "Intentional Negligence" claim.

## IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's motion objecting to the filing of defendants' dispositive motion (Doc. 72) is

**DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion for judgment on the pleadings, or in the alternative, motion for

summary judgment (Doc. 64) be **GRANTED**.

Karen L. Litkovitz
Chief United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GINA L. WATSON,                               Case No. 1:20-cv-802
      Plaintiff,                            Barrett, J.
                                         Litkovitz, M.J.

     vs.

OHIO AMBULANCE SOLUTIONS, LLC, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).